

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-25-2005

# Lodick v. Double Day Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2588

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Lodick v. Double Day Inc" (2005). *2005 Decisions.* Paper 1554.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1554

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2588

GEORGE J. LODICK, JR.;
MARY JANE BOURBAR

v.

DOUBLE DAY, INC.;
SOMERSET SYNFUELS, LLC; WILLIAM WEST;
EDWARD KANE; WEST MATERIALS, INC.

Double Day, Inc.,
Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civil Action No. 00-cv-01330
(Honorable Robert J. Cindrich)

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 28, 2004

Before: SCIRICA, *Chief Judge*, FISHER and GREENBERG, *Circuit Judges*

(Filed January 25, 2005)

OPINION OF THE COURT

SCIRICA, *Chief Judge.*

We will affirm the judgment of the District Court.

Appellees George J. Lodick and Mary Jane Bourbar brought a breach of contract action against their former employer, Double Day, Inc. The District Court conducted a bench trial and issued findings of fact and conclusions of law that we summarize briefly here. Inasmuch as we are writing solely for the parties, we will recite only those facts necessary in the consideration of this appeal.

In 1995 Double Day acquired Diversified Resources, a waste recycling corporation owned by Lodick, in a stock for stock exchange. Lodick, Bourbar, and three Double Day officers signed the stock exchange agreement on March 6, 1995. Under the terms of this agreement, Lodick and Bourbar were to accept nominations to Double Day's Board of Directors. The Agreement also provided that Lodick would enter into a three-year employment agreement with Double Day, the terms of which were set forth in an addendum to the stock exchange agreement.[1]

Lodick and Bourbar entered into employment agreements with Double Day, effective July 29, 1995, under which Lodick was to be paid an annual salary of $120,000 per year for three years and would serve as President and CEO of Double Day. Bourbar was to be paid an annual salary of $65,000 per year for three years and would serve as

---

[1]Under the agreement signed by Lodick, Bourbar, and three Double Day officers on March 6, 1995, Lodick was to be compensated at a base salary of $10,000 per month.

Secretary and Treasurer. During this three-year term, Lodick received $143,409 in total compensation. Bourbar was paid a total of $86,309 during this same three-year period.

Upon expiration of his contract in July 1998, Lodick entered into a second agreement with Double Day setting his future compensation at $12,500 per month. Lodick continued to work for Double Day through September 1998, but did not receive any salary for this two-month period. The District Court entered judgment in favor of Lodick and Bourbar for damages caused by Double Day's failure to pay their full salaries, but found that Lodick was not entitled to damages resulting from Double Day's failure to indemnify him for business expenses.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We review findings of fact for clear error, *Scully v. U.S. WATS, Inc.,* 238 F.3d 497, 505 (3d Cir. 2001), and conclusions of law de novo. *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 208 (3d Cir. 2001) (citing Fed. R. Civ. P. 52(a)).

After a careful review of the record, we find no basis for disturbing the District Court's judgment. The District Court made the sound conclusion that the 1995 employment agreements between Double Day and Lodick and between Double Day and Bourbar were valid under Pennsylvania law. On that basis, the District Court held that Double Day's failure to pay Lodick and Bourbar's full salary constituted a breach of these

3

employment agreements, entitling Lodick to $241,591 in damages and Bourbar to $108,691 in damages.

Double Day contends that Lodick and Bourbar's salaries and employment contracts are invalid because they were never approved by the board of directors.[2] We disagree. Leonard Labuda, a disinterested member of the Double Day board of directors following its acquisition of Diversified Resources, testified that employment contracts and salary figures for Double Day employees were executive decisions, rather than decisions requiring board approval. Moreover, the employment contracts between Double Day and Lodick and between Double Day and Bourbar were drafted by counsel for Double Day. There is no evidence that Appellees' contract terms or salaries were unreasonable in light of their responsibilities and the compensation paid to other Double Day executives. Furthermore, the employment agreements, while signed only by Lodick and Bourbar, adhered to salary terms that had been set forth in the original stock exchange agreement signed by three Double Day officers.

The District Court's conclusions were warranted by the facts and the law. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) (employment contract valid under Pennsylvania law where both parties manifest intent to be bound by the

---

[2]Lodick's employment agreement was signed by Bourbar on behalf of Double Day, in her capacity as Secretary/Treasurer. Similarly, Bourbar's employment agreement was signed, on behalf of Double Day, by Lodick in his capacity as president. Appellants point to this fact as evidence that Lodick and Bourbar contracted only with themselves, not with Double Day, suggesting that their employment contracts were therefore invalid.

4

agreement, the terms of the agreement are sufficiently definite to be enforced, and there is consideration).

We will affirm the judgment of the District Court.